(*)  TAYLOR *versus* GODFREY *&* al.

Whether there was probable cause for a criminal prosecution, is a question of law upon the facts; if, as to the facts, there be no disagreement in the testimony, the question is one of law only.

In an action for a malicious prosecution, if there be no testimony that the accused committed the crime, or that the prosecutor had been informed or knew of any fact inducing a belief that he had, the law itself pronounces that there was no probable cause, and leaves nothing to be submitted to the jury.

ON EXCEPTIONS from *Nisi Prius*, APPLETON, J., presiding. CASE for malicious prosecution.

For several years the steamer Boston carried goods on freight between Boston and Bangor. Its owners had provided a storehouse at the wharf in Bangor for storing such goods as were to be sent and such as were brought by the boat.

They had, for about two years, employed the plaintiff to take charge of the store and goods, and he was sometimes called the "agent of the boat." Among the articles in the storehouse, on storage, were sometimes seen barrels, supposed to contain spirituous liquors. It was proved, however, that the plaintiff was never engaged in selling liquors.

The defendants made a complaint on oath before the Police Court, charging, that the plaintiff kept intoxicating liquors with intent to sell, in violation of the Act of 1851, for the suppression of drinking houses and tippling shops. Upon that complaint a warrant was issued, upon which the officer seized nine barrels of liquor in the storehouse, and summoned

the accused, this plaintiff, to appear before the Police Court
to answer, &c.

No witnesses appeared before the Police Judge in support of
the complaint, and the accused, this plaintiff, was discharged,
but the liquors were* detained for further advisement by the
Judge.

This is an action against those complainants, charging that
their proceeding against plaintiff was a malicious prosecution.

At the trial, the defendants introduced a witness who testi-
fied, *that* he had seen liquor in the storehouse; *that* he was
present when the complaint and warrant were made; *that* be-
fore the complaint was made, he had represented to Judge
Pratt, of the Police Court, that there was liquor in that store-
house; *that,* at the time the defendants were there to get the
warrant, the Judge said that the warrant must be made against
some one, that it was necessary to have some name, and re-
quested the witness to go out and get the name of the agent
of the boat; *that* the witness went into the street and ascer-
tained that the plaintiff was the agent, and returned with the
information; *that* the Judge wrote out the complaint, but it
was not fully completed before the witness returned with the
agent's name, until which time, the name had not been in-
serted in the complaint; *that* on that occasion, in the Court-
room, the defendants inquired of him, and he told them there
was liquor in the storehouse. He further testified that the
agent of the boat had the custody and control of the liquors
in the storehouse, but that he never supposed the plaintiff
sold liquors.

He further stated, (under objection by plaintiff,) that he
had seen at the storehouse a barrel which he afterwards saw
on Exchange street at the store of two Irishmen, who had
been convicted for an unlawful sale of liquors. Whether it
was before or after the making of the complaint against this
plaintiff, that the barrel was seen at the Irishmens' store, the
witness could not remember.

The Police Judge was then introduced as a witness for the
defendants. From his testimony the following facts appear-

ed. The defendant Low, first spoke to him about the liquor, one or two days before the complaint was made, neither of the others being present. Low then urged the necessity of a warrant to search the storehouse for liquors, and stated that he was satisfied the Irish got their supplies of liquor from the boat and storehouse. Witness suggested to Low some difficulties, regarding the description of the place to be searched, and wanted the owners' names. At the subsequent interview, (at which time the complaint and warrant were made,) all the defendants being present, and Low not having been able to procure the owners' names, witness suggested that, if the keeper's name could be obtained, that would be sufficient, and suggested to get the name of the agent of the boat, and a messenger went out and returned with the name of the plaintiff.

On cross-examination, he testified that he could not say that Low, in the conversation before referred to, named any person who, as he supposed, got liquor there. The most that he said was about mere rumors. The witness could not remember any fact that Low stated. On being recalled by plaintiff, after leaving the stand, and being asked whether he understood Low to state that he understood the Irish bought their liquors at the storehouse, or only that the steamer brought liquors for them on freight; he replied that nothing was said about any liquors being bought or sold there, the idea was only that the steamer brought liquors on freight; and here the witness was interrupted by the remark of the presiding Judge, that he understood that to be the purport of his testimony in chief, and the defendants' counsel then stated, that they so understood it, and did not contend there was any pretence that liquors were sold there.

The presiding Judge instructed the jury, among other things, *that*, to make out a case, the plaintiff must prove both want of probable cause and malice; *that* probable cause was the existence of such a state of facts, as would warrant a reasonable man to believe the accused to be guilty of the offence charged; *that* the question of probable cause was one

of law and fact, the facts when there was any dispute, to be settled by the jury, and the law by the Court; *that* although in this case there was no conflict of evidence, still it would be necessary for them to settle some questions of fact, on which the question of law depended; *that* they would inquire whether the plaintiff kept the liquors for sale himself, intending to sell in violation of the statute, or as bailee or depositary; *that* if he kept them simply as bailee, not selling or intending to sell, and the defendants so understood it, there was no probable cause; *that* if they found the plaintiff kept the liquors for sale himself, intending to sell in violation of the statute, there was probable cause, and if they found probable cause, they should return a verdict for defendants; *that* if they found a want of probable cause, then they would inquire whether there was malice; *that* malice was of two kinds, malice in fact, and malice in law; *that* malice in fact was ill-will or a grudge against the party; *that* malice in law, was any wrongful act done knowingly and *in*tentionally to the injury of plaintiff, without just cause or excuse; *that* if a prosecutor took the advice of counsel, laid all the facts frankly before him, and prosecuted in accordance with that advice in good faith, that would be proof of probable cause; *that* a question arose here for the jury to settle; whether the complainants sought and obtained the advice of Mr. Pratt as counsel, or in his capacity as magistrate; *that* if they should find the former, and acted upon his advice, in good faith, that would be evidence, and very strong evidence, to prove probable cause and disprove malice; but if his advice was simply that of a magistrate, it could be used only to negative malice; *that* if the jury believed that defendants supposed the offence was committed, and committed by the plaintiff, and that they acted under the advice of counsel, after disclosing all the facts, in good faith, the jury must render a verdict for the defendants, even though the prosecution originated in the error of the defendants, or of the magistrate.

The jury returned a verdict for defendants, and to the rulings and instructions of the Judge, the plaintiff excepted.

Taylor v. Godfrey.

*Rowe & Bartlett*, for the plaintiff.

Plaintiff made out a *prima facie* case. He showed a want of probable cause, from which the jury might infer malice.

The facts show that defendants knew there was no probable cause when they made the charge; that it was a mere *ruse* to effect another object, which they had in view, the seizure of liquors; that defendants had no expectation or design of procuring the conviction of plaintiff; that they knew no facts, had received no information on which to found a belief of his guilt; and in reality entertained no belief that he was guilty; but that they swore falsely, knowingly and designedly, for no other reason than because they could not get a warrant without so doing.

The only fact in the case, which they relied upon at all as justification, was that the magistrate refused the warrant, unless some one was charged, and suggested to them to charge the plaintiff.

Upon such a state of facts, there can be no pretence of the existence of probable cause. 2 Greenl. Ev. § 455; *James* v. *Phelps*, 11 Ad. & E. 489; *Delagal* v. *Highley*, 3 Bing. N. C. 950; *Stone* v. *Stevens*, 12 Conn. 230; *Merriam* v. *Mitchell*, 1 Shepl. 439; *Brooks* v. *Warwick*, 2 Stark. 389; *Wills* v. *Noyes*, 12 Pick. 327.

Upon such facts the law implies malice. The act of the defendants was clearly unlawful; at least, perjury was so considered before the passage of the " Maine Law."

In a legal sense, " any act done wilfully and purposely, to the prejudice and injury of another, which is unlawful, is, as against that person, malicious." " It is not necessary, to render an act malicious, that the party be actuated by a feeling of hatred or ill-will towards the individual, or that he entertain and pursue a general bad purpose and design. On the contrary he may be actuated by a general good purpose, and have a real and sincere design to bring about a reformation of manners; but if, in pursuing that design, he wilfully inflicts a wrong on others, which is not warranted by law, such act

is malicious." SHAW, C. J., in *Commonwealth* v. *Snelling,* 15 Pick. 337, 340 ; *Wills* v. *Noyes,* 12 Pick. 324, 328.

In actions for malicious prosecution, malice is presumed in the absence of proof of probable cause. Per MELLEN, C. J., *Chesley* v. *Brown,* 11 Maine, 146.

Every false charge for a crime is a libel. The making such charge or complaint, is a publication. An action for malicious prosecution, founded on such charge, is in fact an action for libel, in part. The common form of declaration contains averments of injury to reputation. *Rex* v. *Woodfall,* 5 Bur. 2667. Such is the declaration in this case. "It is not the danger of plaintiff, but the scandal, vexation and expense, upon which this action is founded." 1 Bl. Com. 127.

Every criminal prosecution, instituted for any other purpose than the ostensible and avowed purpose of procuring the conviction and punishment of the accused, is malicious.

The commencing of such a prosecution, on a charge which the prosecutor knows to be false, must be done for some sinister purpose, and is a fraud upon the law, and deeply malicious towards the individual accused.

"No evidence of malice can be more cogent than the proof that defendant *knew* that plaintiff was innocent." 2 Stark. Ev. 913. To the same point is *Ives* v. *Bartholomew,* 9 Conn. 313.

The facts proved by the defendants themselves, are sufficient to sustain an indictment against each of them for perjury. Those facts show that they swore falsely, knowingly, and therefore wilfully and corruptly ; that they did this with a full knowledge that their oaths would work wrong and injury to plaintiff; that they took these oaths with the design to do such wrong and injury.

The presiding judge erred in submitting the question of probable cause to the jury.

The question of probable cause is to be settled by the Court, unless there be a conflict of evidence. *Stone* v. *Crocker,* 24 Pick. 81.

Here the facts were undisputed ; and the presiding Judge

Taylor *v.* Godfrey.

should have instructed the jury that there was no probable cause.

He erred further in raising a question of fact, which was not raised by the evidence; that is, whether plaintiff kept liquor for sale himself, or as bailee ; and in making the decision of probable cause depend upon the finding of the jury on that fact.

There was not only no proof, but not even a pretence, that plaintiff kept the liquors with intent to sell. The entire proof of both parties on this point was, that he kept them simply as bailee.

The presiding Judge erred in instructing the jury, that if the jury believed defendants *supposed* the offence was committed, and by plaintiff, and that they acted under the advice of counsel, after disclosing all the facts in good faith, the jury must render a verdict for defendants, even though the prosecution originated in the error of the defendants, or of the magistrate.

Supposition is less than belief. *Belief* is not enough in a case like this. Defendants must, in addition, have *reason to believe.*

But if right in the law, the Judge erred in instructing the jury, that a question arose in this case, as to whether the complainants sought and obtained the advice of Mr. Pratt, as counsel or as magistrate, and that their verdict should be influenced by their finding on that question.

The evidence raises no such question — shows no ground for a pretence that Pratt acted as counsel.

The whole proof is, that they applied to him only as a magistrate ; and that he acted only as a magistrate.

They did not seek the advice of Mr. Pratt, as to whether the facts disclosed were sufficient to warrant a charge against Taylor ; for they had no facts to disclose ; and when they went to him they had no charge against Taylor to make ; and there was no question at all made as to the sufficiency or insufficiency of the facts ; but they inserted Taylor's name in the complaint, not because Pratt advised them there was

probable cause to charge, or suspect him, but because Pratt told them he would not receive a complaint unless it charged somebody. See *Merriam* v. *Mitchell*, 1 Shep. 439 ; *Brooks* v. *Warwick*, 2 Stark. 389 ; *Wills* v. *Noyes*, 12 Pick. 327.

*Cutting*, for the defendants.

The defendants went to the only and proper tribunal to complain against the liquor in the storehouse, and not against any individual.

But the Police Judge informed them, " that the warrant must be made against some one, that it was necessary to have some name, and requested some one to get the name of the agent."

The plaintiff's name was consequently inserted in the complaint, as purely a matter of form, under a mistaken idea of the Police Judge that some name was necessary.

The defendants' object was to put the liquor on trial, and not the agent ; they never appeared on trial against him or procured any one to appear.

Now, under these circumstances, I contend, these defendants were justified ; the name was procured and inserted, if not by Pratt himself, it was at his suggestion ; that proceeding was advised by him and by him officially sanctioned.

It also discloses the fact, that these defendants could not have been actuated by any malicious or improper motives towards this plaintiff, but is conclusive evidence to the contrary.

" The plaintiff is bound to prove, *that the prosecution was at the instigation of the defendants,* was without probable cause and malicious." *Wells* v. *Parsons*, 3 Harring. 505 ; *Hardin* v. *Bordas*, 1 Iredell, 143 ; *Feazle* v. *Simpson*, 1 Scam. 30.

Now this prosecution was not at the instigation of defendants, but at the instigation of Judge Pratt.

And after all, it is immaterial so far as it regards this plaintiff, whether his name was inserted in the warrant or not, because, by the 11th § of c. 211, it was the duty of the officer " to summon the owner or keeper of said liquors, seized as aforesaid, if he shall be known to the officer seizing the same,

before the Justice or Judge by whose warrant the liquors were seized, &c."

Now, it was known to the officer, that the plaintiff was the keeper of the liquors, and it was his duty to have summoned him, whether his name was inserted in the complaint and warrant or not, so, that in either event he would have had the same duties to perform and the same responsibilities to assume.

The Judge's charge to the jury was strictly conformable to law. *Stone* v. *Swift*, 4 Pick. 389 ; *Stone* v. *Crocker*, 24 Pick. 81.

*J. E. Godfrey*, on same side.

The facts proved are such as to warrant a reasonable man to believe the plaintiff guilty, which is probable cause. *Stone* v. *Crocker*, 24 Pick. 86 ; *Hall* v. *Hawkins*, 5 Humphrey (Tenn.) 357 ; *Farris* v. *Starkie*, 3 B. Munroe, (Ken.) 4 ; *Stone* v. *Stevens*, 12 Conn. 219.

The representation to defendants by a third person of such facts, was sufficient to authorize defendants to make the complaint. *French* v. *Smith*, 4 Verm. 363.

The *onus probandi* is on the plaintiff to show affirmatively want of probable cause. *Stone* v. *Crocker*, 24 Pick. 84 ; *Gorten* v. *DeAngelis*, 14 Wend. 192.

And the plaintiff cannot require defendant to prove probable cause until the plaintiff prove express malice. *Frowman* v. *Smith*, 6 Littell, (Ken.) 7.

The complainants, (defendants,) acted by advice of counsel, which is evidence of probable cause and disproves malice. *Stone* v. *Swift*, 4 Pick. 389 ; *Wills* v. *Noyes & al.* 12 Pick. 327.

A counsellor may act as a magistrate, although he has previously given an opinion upon the question. *Wilson* v. *Hinkley*, (Kirby,) Conn., 199.

Presumption of malice may be rebutted by showing, that the prosecution was instituted and carried on without malice and for justifiable ends. *Stone* v. *Stevens*, 12 Conn. 229–30 ; *Wills* v. *Noyes & al.* 12 Pick. 327.

SHEPLEY, C. J. — The action is case for a malicious prosecution, charging the plaintiff with keeping spirituous and intoxicating liquors for sale in the storehouse of the steamer Boston, in the city of Bangor, in violation of the provisions of the Act approved on June 2, 1851, c. 211, § 11. Those provisions required, that the complainants should state on oath, "that they have good reason to believe and do believe, that spirituous and intoxicating liquors are kept or deposited and intended for sale by any person not authorized to sell the same in said city or town, under the provisions of this Act." The defendants appear to have made a positive charge upon oath, that the plaintiff kept such liquors intended for sale. Before making such an absolute charge, they should at least have been careful to ascertain, that there was reason to believe it to be true.

By the record of the Police Court it appeared, that the prosecution, so far as it respected the plaintiff, had been finally determined by an acquittal. From the bill of exceptions it appears, that there was an entire absence of testimony to prove that he had ever kept such liquors intended for sale, or that the complainants had been informed, that he had, or that they had been informed or had knowledge of any fact inducing the belief, that he had. Upon such testimony it became the duty of the Court to instruct the jury, that there was not probable cause for the prosecution. It could only be inferred from testimony proving that they sought for and acted under the advice of counsel. And whether they did in that respect, as well as in others, so conduct as to exhibit probable cause, was a question of law to be decided by the Court when there was no contradictory testimony, and no dispute about the facts presented by the testimony. There does not appear to have been any in this case respecting what occurred between the complainants and the Judge of the Police Court, who was the only counsel consulted.

Forbearing to make any comments upon the propriety or right of a magistrate, upon being first consulted, to express an opinion as counsel upon the effect of statements, which

if proved, might constitute a part or the whole of the testimony, on which he might very soon be required to decide upon the guilt or innocence of a person accused of crime, it will be necessary only to ascertain whether there was any testimony in the case, which authorized the Court to submit it to the jury, that probable cause might be inferred from it on account of legal advice sought and given.

The officer states in substance, that he informed the complainants, that there was such liquor in the storehouse. He does not state, that he informed them, that those liquors were intended for sale or that liquor had been sold there, or that he informed them of any facts inducing them to believe it. On the contrary he testified, that he never supposed that the plaintiff sold or intended to sell liquors, thus showing that the complainants could not have received any information from him authorizing the complaint.

The police magistrate testified in substance, that one of the complainants, a day or two before the warrant was issued, urged the necessity of one to search the storehouse for liquors, stating, that he was satisfied that the Irish got their supplies of liquors from the boat or storehouse; that he suggested some difficulties, and stated that he wanted the names of the owners; that nothing was said about any liquors being bought or sold at the storehouse; the idea was only, that the steamer brought liquors on freight. When the complainants were all present, on the day when it was made, he testified, that he suggested, that if the keeper's name could be obtained, that would be sufficient, and suggested to them to get the name of the agent of the boat. It is not perceived, that there was any other testimony that could tend to prove, that the defendants consulted counsel and acted upon his advice. No person appears to have asked for, or to have expressed any opinion, whether their information, if it could be proved to be correct, would authorize them to make the complaint.

In the case of Stevens v. Fossett, 27 Maine, 266, this Court expressed the opinion, " that if a person with an honest wish to ascertain, whether certain facts will authorize a suit on

a criminal prosecution, lays all such facts before one learned in the law, and solicits his deliberate opinion thereon, and the advice is favorable to the prosecution, which is thereupon commenced, it will certainly go far, in the absence of other facts, to show probable cause and to negative malice."

It would have been entirely correct to consider all the testimony introduced in defence as true, for there was no contradictory testimony or other cause to occasion doubt.

Whether it proved probable cause, according to the rule stated above, was a question of law to be determined by the Court. It was submitted to the jury, thereby affording them an opportunity to find, that there was probable cause from a state of undisputed facts, which the law pronounces to be insufficient to prove it. *Exceptions sustained, verdict set aside and new trial granted.*

TENNEY, RICE and HATHAWAY, J. J., concurred.